# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SAMUEL CARTER, a U.S. Citizen,<br>34044 Centerstone Circle<br>Temecula, California 92592<br><br>and;<br><br>ADEBA NASIMI, a Citizen of Afghanistan,<br>Kabul, Afghanistan<br><br>       v.<br><br>UNITED STATES DEPARTMENT<br>OF HOMELAND SECURITY,<br>Serve: Office of the General Counsel,<br>Department of Homeland Security,<br>Mail Stop 3650,<br>Washington, D.C. 20528<br><br>UNITED STATES CITIZENSHIP<br>AND IMMIGRATION SERVICES,<br>Serve: U.S. Citizenship & Immigration Services,<br>425 I St NW, Room 6100,<br>Washington, D.C. 20536<br><br>UNITED STATES DEPARTMENT OF STATE,<br>Serve: Executive Office, Office of the Legal Advisor,<br>Suite 5.600<br>600 19th St NW,<br>Washington, D.C. 20522<br><br>EMBASSY OF THE UNITED STATES, KABUL, AFGHANISTAN,<br>Serve: Executive Office, Office of the Legal Advisor,<br>Suite 5.600<br>600 19th St NW,<br>Washington, D.C. 20522 | Case No. 1:21-cv-00422<br><br><br><br><br><br>COMPLAINT IN THE NATURE OF MANDAMUS ARISING FROM DEFENDANTS' REFUSAL TO ADJUDICATE PLAINTIFFS' IMMIGRANT VISA APPLICATION |

Law Offices of Bashir Ghazialam

**COMPLAINT IN THE NATURE OF MANDAMUS ARISING FROM DEFENDANTS' REFUSAL TO ADJUDICATE PLAINTIFFS' IMMIGRANT VISA APPLICATION**         1

| | |
|---|---|
| 1 | ALEJANDRO MAYORKAS |
| 2 | Secretary of the Department of Homeland Security, |
| 3 | Serve: Office of the General Counsel, |
| 4 | Department of Homeland Security, Mail Stop 3650 |
| 5 | Washington, D.C. 20528 |
| 6 | |
| 7 | TRACY RENAUD, Senior Official Performing the Duties of the Director, |
| 8 | U.S. Citizenship and Immigration Services, Serve: U.S. Citizenship & Immigration |
| 9 | Services, 425 I St NW, Room 6100 |
| 10 | Washington, D.C. 20536 |
| 11 | |
| 12 | ANTONY J. BLINKEN United States Secretary of State, |
| 13 | Serve: Executive Office, Office of the Legal Advisor, |
| 14 | Suite 5.600 600 19th St NW, |
| 15 | Washington, D.C. 20522 |
| 16 | |
| 17 | and; |
| 18 | ROSS WILSON Acting Ambassador/ Chargé d'Affaires of the |
| 19 | United States at the U.S. Embassy, Kabul, Afghanistan, |
| 20 | Serve: Executive Office, Office of the Legal Advisor, |
| 21 | Suite 5.600 600 19th St NW, |
| 22 | Washington, D.C. 20522 |
| 23 | |
| 24 | |
| 25 | **COMPLAINT IN THE NATURE OF MANDAMUS ARISING FROM** |
| 26 | **DEFENDANTS' REFUSAL TO ADJUDICATE PLAINTIFFS' IMMIGRANT** |
| 27 | **VISA APPLICATION** |
| 28 | |

Law Offices of
Bashir Ghazialam

COME NOW, Plaintiff SAMUEL CARTER and his fiancé, Plaintiff ADEBA NASIMI, in order to respectfully request a hearing before this Court. Plaintiffs request that this Court issue a decision in Plaintiff ADEBA NASIMI's fiancé visa case, which has been pending for approximately 20 months. Alternatively, Plaintiffs request that this Court issue a writ of mandamus requiring Defendants to adjudicate Plaintiff ADEBA NASIMI's fiance visa application.

## PARTIES

1. Plaintiff SAMUEL CARTER ("CARTER") is a citizen of the United States, who has immigrated to the United States as a child and has been long time resident of this country.

2. Plaintiff ADEBA NASIMI ("NASIMI") is a citizen of Afghanistan. She is the fiancé of CARTER. In 2019, CARTER travelled to Afghanistan to personally meet NASIMI, where they officially became engaged. Afghan law, culture and customs require that the engagement period last as short as possible and the respective parties avoid any delay in entering marital union.

3. The fiancé(e) visa, which is formally known as a K-1 visa, is a nonimmigrant visa that allows a foreign citizen to travel to America to marry his or her U.S.-citizen fiancé(e) and then apply for lawful-permanent-resident status. See U.S. Dep't of Homeland Sec., Visas for Fiancé(e)s of U.S. Citizens (March 23, 2018), https://bit.ly/35j9Jup (USCIS Fiancé(e) Visa Information). It is a subset of K visas, others of which are available to foreign-born spouses and to children of fiancé(e)s and spouses.

Law Offices of Bashir Ghazialam

COMPLAINT IN THE NATURE OF MANDAMUS ARISING FROM DEFENDANTS' REFUSAL TO ADJUDICATE PLAINTIFFS' IMMIGRANT VISA APPLICATION

3

4. To obtain a K-1 visa, the U.S. citizen fiancé(e) must file a Form I-129F, commonly known as a Petition for Alien Fiancé(e), with a domestic office of the United States Citizenship and Immigration Services. Id.; see also Dep't of Homeland Sec., Petition for Alien Fiancé(e) (July 23, 2020), https://bit.ly/3eJ57k5 (Form I-129F); U.S. Dep't of State — Bureau of Consular Affairs, Nonimmigrant Visa for a Fiancé(e) (K-1) (last visited Nov. 10, 2020), https://bit.ly/3n6Qmug (State Dep't Fiancé(e) Visa Information). USCIS then reviews the form for completeness and requests additional documentation as needed. See USCIS Fiancé(e) Visa Information.

5. Once USCIS determines that the U.S. citizen has established the foreign-born fiancé(e)'s eligibility for the visa, it sends the application to the State Department's National Visa Center for further processing. Id. After NVC receives an approved application from USCIS, it creates a case in the State Department's electronic application system. See U.S. Dep't of State, Step 2: Begin National Visa Center (NVC) Processing (last visited Nov. 9, 2020), https://bit.ly/2JKANtW. It then forwards the case to the U.S. Embassy or Consulate where the foreign-born fiancé(e) will apply and interview for a K-1 visa (generally, where the foreign-born fiancé(e) resides). Id.; see also State Dep't Fiancé(e) Visa Information.

6. The U.S. Embassy or Consulate, once in receipt of the case, schedules an interview with the foreign-born fiancé(e). See USCIS Fiancé(e) Visa Information. A State Department consular officer conducts that interview, reviews forms and documentation that the couple has provided, and determines whether the fiancé(e) qualifies for the K-1 visa. Id. If the consular officer grants the visa, it is valid for

Law Offices of Bashir Ghazialam

COMPLAINT IN THE NATURE OF MANDAMUS ARISING FROM DEFENDANTS' REFUSAL TO ADJUDICATE PLAINTIFFS' IMMIGRANT VISA APPLICATION

4

up to six months, but it "does not guarantee admission to the United States." Id. Rather, "[a] CBP officer at the port of entry . . . make[s] the ultimate decision about whether to admit [the] fiancé(e)." Id. Following admission to the United States, the couple has 90 days to get married, and the newlywed, foreign-born spouse can then apply for a Permanent Resident Card (otherwise known as a Green Card). Id.

7. NASIMI is a fiancé visa applicant through her U.S. Citizen fiancé, CARTER.

8. CARTER filed a petition for alien fiancé for NASIMI, with United States Citizenship and Immigration Services ("USCIS"), which was received by USCIS on July 1, 2019.

9. On October 25, 2019, USCIS approved the July 2019 petition and forwarded the approved petition to the National Visa Center ("NVC"), a division of the Department of State ("DOS"), for additional processing.

10. On January 31, 2021, NASIMI filed Form DS-160, Online Nonimmigrant Visa Application, K-Visa Class.

11. Plaintiffs paid, and Defendants accepted, all applicable filing and visa fees.

12. NASIMI attended her embassy interview on February 4, 2020. The U.S. Embassy in Kabul, Afghanistan, which has conducted and completed NASIMI's interview on February 4, 2020. The embassy did not request any additional information or documents from NASIMI and advised her that she would be contacted once a final decision on her application was made. Plaintiffs' visa application has remained in administrative processing thereafter. Defendants have refused to issue a fiancé visa to NASIMI.

Law Offices of Bashir Ghazialam

COMPLAINT IN THE NATURE OF MANDAMUS ARISING FROM DEFENDANTS' REFUSAL TO ADJUDICATE PLAINTIFFS' IMMIGRANT VISA APPLICATION

5

13. To date, Plaintiffs have contacted the embassy on multiple occasions to obtain an update on the status of the application, as early as March 16, 2020 and as late as February 8, 2021.

14. In response to each inquiry, the embassy's response was as follows:

> "Our records indicate that this case is still undergoing necessary administrative processing in order to verify the applicant's qualifications for the visa.  We continue to work to streamline the visa process where possible, while ensuring that applicants are both qualified for a visa and do not pose a security risk to the United States.  While we cannot predict when the processing of the visa will be completed, please be assured that the Embassy and the Department of State are aware of your concerns and will do all we can to see that the processing of the case is concluded as soon as possible. Please note that this is an important part of the process that can be neither waived nor expedited. While the case is undergoing administrative processing, applicants will not be contacted by the Consular Section. Please do not offer to submit unsolicited documents to our office as this will not have any effect in the current process. We appreciate your patience in this regard.

15. Defendant Department of Homeland Security ("DHS") is the agency of the United States that is responsible for implementing the petition for alien fiancé provisions of the law and assisting DOS with background and security checks.

13. Defendant United States Citizenship and Immigration Services ("USCIS") is the component of DHS that is responsible for processing petitions on behalf of alien

Law Offices of Bashir Ghazialam

COMPLAINT IN THE NATURE OF MANDAMUS ARISING FROM DEFENDANTS' REFUSAL TO ADJUDICATE PLAINTIFFS' IMMIGRANT VISA APPLICATION

6

fiancé seeking to file fiancé visa applications.

14. Defendant Department of State ("DOS") is the agency of the United States that is responsible for communicating with DHS and managing Defendant Embassy of the United States in Kabul, Afghanistan ("Kabul Embassy"). Defendant DOS is also responsible for implementing the fiancé visa provisions of the law.

15. Defendant Kabul Embassy is a component of the DOS that is responsible for processing fiancé visa applications and implementing the fiancé visa provisions of the law.

16. Defendant Alejandro Mayorkas ("MAYORKAS"), Secretary of the Department of Homeland Security, is the highest ranking official within DHS. MAYORKAS, by and through his agency for DHS, is responsible for implementation of the Immigration and Nationality Acts ("INA") and for ensuring compliance with applicable federal laws, including the Administrative Procedures Act ("APA"). Defendant MAYORKAS is sued in his official capacity as an agent of the government of the United States.

13. Defendant Tracy Renaud ("RENAUD"), Senior Official Performing the Duties of the Director, U.S. Citizenship and Immigration Services, is the highest ranking official within USCIS. Defendant RENAUD is responsible for the implementation of the INA and for ensuring compliance with all applicable federal laws, including the APA. Defendant RENAUD is sued in her official capacity as an agent of the government of the United States.

14. Defendant Antony J. Blinken ("BLINKEN"), Secretary of State, is the highest ranking official within DOS. Defendant BLINKEN is responsible for

Law Offices of
Bashir Ghazialam

COMPLAINT IN THE NATURE OF MANDAMUS ARISING FROM DEFENDANTS' REFUSAL TO ADJUDICATE PLAINTIFFS' IMMIGRANT VISA APPLICATION

7

implementation of the INA for ensuring compliance with applicable federal laws, including the APA. Defendant BLINKEN is sued in his official capacity as an agent of the government of the United States.

15. Defendant Ross Wilson ("WILSON") is the Acting Ambassador/Chargé d'Affaires of the Embassy of the United States in Kabul, Afghanistan. Defendant WILSON is being sued in his official capacity as an agent of the government of the United States.

## JURISDICTION AND VENUE

16. This Court has federal question jurisdiction over this cause pursuant to 28 U.S.C. § 1331, as it raises claims under the Constitution of the United States, the INA, 8 U.S.C. § 1101 et seq., and the APA, 5 U.S.C. § 701 et seq., in conjunction with the Mandamus Act, 27 U.S.C. § 1361.

17. Venue is proper pursuant to 28 U.S.C. § 1391(e)(1) because (1) Defendants are agencies of the United States or officers or employees thereof acting in their official capacity or under color of legal authority; (2) no real property is involved in this action; and (3) Defendants all maintain offices within this district.

18. This Court is competent to adjudicate this case, notwithstanding the doctrine of consular non-reviewability, *see United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537 (1950), because Defendants have not made any decision in regard to Plaintiffs' visa application.

///

Law Offices of Bashir Ghazialam

COMPLAINT IN THE NATURE OF MANDAMUS ARISING FROM DEFENDANTS' REFUSAL TO ADJUDICATE PLAINTIFFS' IMMIGRANT VISA APPLICATION

8

# FIRST CLAIM FOR RELIEF
## (Agency Action Unlawfully Withheld and Unreasonably Delayed)

For their first claim for relief against all Defendants, Plaintiffs allege and state the following:

19. Plaintiffs reallege and incorporate by reference the foregoing paragraphs as though fully set out herein.

20. The APA requires that "[w]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it." 5. U.S.C. § 555(b). Section 555(b) creates a non-discretionary duty to conclude agency matters. *Litton Microwave Cooking Prods. v. NLRB*, 949 F.2d 249, 253 (8th Cir. 1991). A violation of this duty is a sufficient basis for mandamus relief.

21. The APA permits this Court to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).

22. The DOS Consular Electronic Application Center claims that Plaintiffs' visa application is currently undergoing "administrative processing."

23. DOS regularly works with DHS when carrying out background and security investigations that are delayed by administrative processing.

24. DHS has a policy, known as the "Controlled Application Review and Resolution Program" ("CARRP") that intentionally delays applications of individuals hailing from predominantly Muslim countries due to security concerns.

25. Upon information and belief, Plaintiffs allege that Defendants are intentionally delaying a response to DOS in relation to Plaintiffs' visa application pursuant to

Law Offices of Bashir Ghazialam

COMPLAINT IN THE NATURE OF MANDAMUS ARISING FROM DEFENDANTS' REFUSAL TO ADJUDICATE PLAINTIFFS' IMMIGRANT VISA APPLICATION

9

CARRP. Plaintiffs allege that this delay is because NASIMI is from Afghanistan, which is predominantly Muslim. Plaintiffs further allege that the delay in processing is entirely unrelated to the question of whether NASIMI's and CARTER's engagement is bona-fide, which they have already proven.

26. Upon information and belief, Plaintiffs allege that DOS is complicit in the delay in processing Plaintiffs' visa application.

27. Since 2008, Defendants have used CARRP – an internal policy that has neither been approved by Congress nor subjected to public notice and comment – to investigate and adjudicate applications deemed to present potential "national security concerns." CARRP prohibits USCIS field officers from approving an application with a potential "national security concern," instead directing officers to deny the application or delay adjudication – often indefinitely – in violation of the INA.

28. CARRP's definition of "national security concern" is far more expansive than the security-related ineligibility criteria for immigration applications set forth by Congress in the INA. Rather, CARRP identifies "national security concerns" based on deeply flawed and expansive government watchlists, and other vague and overbroad criteria that bear minimal relation to the statutorily security-related ineligibility criteria. In accordance with CARRP, law-abiding individuals, such as NASIMI, are labeled as "national security concerns," despite the fact that they pose no security threat and the sole grounds for delay are innocuous activity, associations, and characteristics, such as national origin.

29. While the precise number of individuals subjected to CARRP is unknown,

Law Offices of Bashir Ghazialam

COMPLAINT IN THE NATURE OF MANDAMUS ARISING FROM DEFENDANTS' REFUSAL TO ADJUDICATE PLAINTIFFS' IMMIGRANT VISA APPLICATION

10

USCIS data shows that between 2008 and 2012, over 19,000 individuals from 21 Muslim-majority countries or regions were subjected to CARRP.

30. Plaintiffs allege that NASIMI's application has been in administrative processing beyond a reasonable period for completing such processing of her visa application.

31. The failure to complete administrative processing in NASIMI's fiancé visa application is attributable to the refusal of Defendants to adhere to their legal duty to avoid unreasonable delays under the INA and applicable rules and regulations.

32. There are no alternative forms of relief available to Plaintiffs. Plaintiffs have exhausted all administrative remedies available to them in pursuit of a timely resolution in this matter, including repeatedly requesting processing of their case with USCIS, DOS, and the NVC and receiving boiler plate responses each time.

## SECOND CLAIM FOR RELIEF
**(Violation or Right to Due Process of Law)**

For their second claim for relief against all Defendants, Plaintiffs allege and state the following:

33. Plaintiffs reallege and incorporate by reference the foregoing paragraphs as though fully set out herein.

34. The right to fundamental fairness in administrative adjudication is protected by the Due Process Clause of the Fifth Amendment to the United States Constitution. Plaintiffs may seek redress in this Court for Defendants' cumulative failure to provide a reasonable and just framework of adjudication in accordance with applicable law.

Law Offices of Bashir Ghazialam

COMPLAINT IN THE NATURE OF MANDAMUS ARISING FROM DEFENDANTS' REFUSAL TO ADJUDICATE PLAINTIFFS' IMMIGRANT VISA APPLICATION

11

35. The combined delay and failure to act by Defendants is a violation of Plaintiffs' due process rights.

36. The combined delay and failure to act by Defendants has irrevocably harmed Plaintiffs. First, the refusal of Defendants to issue NASIMI her visa has caused a loss of consortium between her fiancé and husband-to-be. Second, despite being engaged and planning to be married to CARTER, NASIMI is forced to reside in the home of her parents with her own family and as a result, is experiencing heightened psychological trauma because she is perceived by her family and other relatives as bringing shame to them by contravening Afghan and religious custom as an engaged woman who is unacceptably prolonging her engagement and delaying here marriage to her fiancé, and nor is she residing with his family.  Third, , NASIMI constantly fears for her life. She lives in a suppressed society with very limited protection for women and women's rights, and under a very vulnerable government under constant and growing threat and attacks by the Taliban and other opposition groups. As such, she remains under constant fear that she will be harmed by religious fundamentalists for engaging with an American. Plaintiffs have been irrevocably harmed in other ways, as well.

///

///

///

///

///

Law Offices of Bashir Ghazialam

COMPLAINT IN THE NATURE OF MANDAMUS ARISING FROM DEFENDANTS' REFUSAL TO ADJUDICATE PLAINTIFFS' IMMIGRANT VISA APPLICATION

12

# REQUEST FOR RELIEF

WHEREFORE, Plaintiffs NASIMI and CARTER request the following relief:

1. That this Court assume jurisdiction over this action;

2. Enter a judgment declaring that (a) CARRP violates the INA and its implementing regulations; Article 1, Section 8, Clause 4 of the United State Constitution; the Fifth Amendment to the United States Constitution; and the APA; and (b) Defendants violated the APA by adopting CARRP without promulgating a rule and following the process for notice and comment by the public;

3. Enjoin Defendants, their subordinates, agents, employees, and all others acting in concert with them from applying CARRP to the processing and adjudication of Plaintiffs' immigration benefit applications;

4. Order Defendants to rescind CARRP because they failed to follow the process for notice and comment by the public;

5. That this Court issue a writ of mandamus compelling Defendants to promptly complete all administrative processing within sixty days;

6. That this Court take jurisdiction of this matter and adjudicate NASIMI's fiancé visa pursuant to this Court's declaratory judgment authority;

7. That this Court issue a writ of mandamus compelling Defendants to issue K-1 fiancé visa to NASIMI;

8. That this Court issue a writ of mandamus compelling Defendants to explain to Plaintiffs the cause and nature of the delay and inform Plaintiffs of any action they may take to accelerate processing of the visa application;

Law Offices of Bashir Ghazialam

COMPLAINT IN THE NATURE OF MANDAMUS ARISING FROM DEFENDANTS' REFUSAL TO ADJUDICATE PLAINTIFFS' IMMIGRANT VISA APPLICATION    13

9. Attorney's fees, legal interests, and costs expended in relation to this matter pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412.

10. Such other and further relief as this Court may deem just and proper.

Dated: February 17, 2021                Respectfully submitted,

                                        s/ Bashir Ghazialam
                                        Bashir Ghazialam, Esq., CASBN 212724
                                        LAW OFFICES OF BASHIR GHAZIALAM
                                        P.O. Box 928167
                                        San Diego, California 92192
                                        Phone (619) 795-3370
                                        Facsimile (866) 685-4543
                                        Email bg@lobg.net

                                        Attorney for Plaintiffs

Law Offices of Bashir Ghazialam

COMPLAINT IN THE NATURE OF MANDAMUS ARISING FROM DEFENDANTS' REFUSAL TO ADJUDICATE PLAINTIFFS' IMMIGRANT VISA APPLICATION                14