UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **SAMUEL CARTER**, *et al.*, | |
| *Plaintiffs,* | |
| **v.** | Case No. 1:21-cv-422-RCL |
| **U.S. DEPARTMENT OF HOMELAND SECURITY**, *et al.*, | |
| *Defendants.* | |

## MEMORANDUM OPINION

Plaintiffs in this lawsuit seek a fiancée visa for plaintiff Adeba Nasimi. Ms. Nasimi and her American fiancé Samuel Carter sued defendants—various government entities responsible for administering the visa process—after Ms. Nasimi's visa application was denied and left pending in a state of "administrative processing" for over a year. ECF No. 1. Plaintiffs initially sought to compel defendants to complete their adjudication. But after this lawsuit was filed, defendants finalized the denial. Defendants filed a motion to dismiss, ECF No. 7, and plaintiffs filed an amended complaint to challenge the ultimate denial, Am. Compl., ECF No. 8. Defendants again moved to dismiss, Defs.' Mot., ECF No. 9, plaintiffs filed an opposition, Pls.' Opp'n, ECF No. 10, and defendants replied, Defs.' Reply, ECF No. 11.

Upon consideration of the parties' filings, ECF Nos. 7, 8, 9, 10, 11, applicable law, and the record as a whole, the Court will **DISMISS AS MOOT** defendants' first motion to dismiss, **GRANT** defendants' renewed motion to dismiss, and **DISMISS** plaintiffs' amended complaint in its entirety.

## I.   BACKGROUND

### A.  Statutory Framework

The fiancé(e) visa, formally known as a K-1 visa, is a nonimmigrant visa that allows a foreign citizen to travel to America to marry his or her U.S.-citizen fiancé(e) and then apply for lawful-permanent-resident status. *See* U.S. Dep't of Homeland Sec., Visas for Fiancé(e)s of U.S. Citizens (March 23, 2018), https://bit.ly/35j9Jup.

To obtain a K-1 visa, the U.S. citizen fiancé(e) must file a Form I-129F, also known as a Petition for Alien Fiancé(e) with a domestic office of the U.S. Citizenship and Immigration Services ("USCIS"), which is part of the Department of Homeland Security ("DHS"). *See Milligan v. Pompeo*, 502 F. Supp. 3d 302, 309 (D.D.C. 2020) (describing process); Dep't of Homeland Sec., Petition for Alien Fiancé(e) (July 23, 2020), https://bit.ly/3eJ57k5 (Form I-129F). USCIS reviews the petition, and if it determines that the U.S. citizen has established the foreign-born fiancé(e)'s eligibility for the visa, it sends the application to the State Department's National Visa Center ("NVC") for additional processing. *See Milligan*, 502 F. Supp. 3d at 309.

After the NVC processes the petition, the alien fiancé(e) submits a visa application, or Form DS-160—the Online Nonimmigrant Visa Application. U.S. Dep't of State—Bureau of Consular Affairs, Nonimmigrant Visa for a Fiancé(e) (K-1) (last visited Dec. 19, 2021), https://bit.ly/3n6Qmug. The NVC then forwards the visa application to the U.S. embassy or consulate where the alien fiancé(e) lives. *Id.* A consular officer in that office is responsible for interviewing the alien fiancé(e), reviewing the relevant documents, and requesting a background check. *Bagherian v. Pompeo*, 442 F. Supp. 3d 87, 90 (D.D.C. 2020). A fiancé(e) with an approved K-1 visa may then enter the United States and must marry the U.S. citizen indicated in the initial petition within 90 days of entry. *Id.*.

**B. Factual Background and Procedural History[1]**

On July 1, 2019, Mr. Carter submitted his petition (Form I-129F) for Ms. Nasimi to USCIS.
Am. Compl. 8. On October 25, 2019, USCIS approved the petition and forwarded it to the NVC.
*Id.* On January 31, 2020, Ms. Nasimi submitted her Form DS-260 to the State Department, which
later forwarded her application to the U.S. embassy in Kabul, Afghanistan. *Id.* at 8–9.

A consular officer at the embassy interviewed Ms. Nasimi on February 4, 2020, but refused
to issue her a visa. *Id.* at 9. Despite this refusal, Ms. Nasimi was "advised [] that she would be
contacted once a final decision on her application was made" and her application "remained in
administrative processing thereafter." *Id.* Defendants did not request any additional documents
or information. *Id.* After a year in this state of "administrative processing," plaintiffs filed the
present lawsuit on February 17, 2021, to compel a decision on Ms. Nasimi's application. *Id.* at 9–
10; *see* ECF No. 1 at 9 & 13.

Instead, on March 25, 2021, the consular officer returned Mr. Carter's petition to USCIS
for review and possible revocation. Declaration of Chloe Dybdahl ("Dybdahl Decl.") ¶ 5,[2] ECF
No. 9-1. Shortly after a discussion between the parties' counsel, the embassy sent Ms. Nasimi an
email in late April 2021 asking her to "pick up documents relating to her case." Am. Compl. 10.
The embassy returned Ms. Nasimi's passport and explained that her case had been returned to the
NVC. *Id.* Ms. Nasimi was not provided with an explanation and told that her lawyer "knows what

---

[1] Unless otherwise noted, the relevant facts are drawn from plaintiffs' complaint and are assumed to be true
for purposes of the motion to dismiss. Because there are both missing and repeated paragraphs in plaintiffs'
amended complaint, the Court will cite to the complaint by page number.

[2] At the motion to dismiss stage, the Court may consider facts "alleged in the complaint, . . . and matters of
which [it] may take judicial notice. *E.E.O.C. v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C.
Cir. 1997). The Court takes judicial notice of this information related to Ms. Nasimi's visa application,
which is posted on the official public website of the Department of State. *See, e.g., Markowicz v. Johnson*,
206 F. Supp. 3d 158, 161 n.2 (D.D.C. 2016).

is going on with [her] case." *Id.* She alleges that the personnel at the embassy treated her "meanly and unprofessionally" and believes that the embassy retaliated against her for filing a lawsuit by refusing her visa. *Id.* at 11.

After defendants filed a motion to dismiss, ECF No. 7, plaintiffs filed an amended complaint challenging the final visa denial under the Administrative Procedures Act ("APA"), the Declaratory Judgment Act, and the Mandamus Act. *See* Am. Compl. 3, 16–18. While the amended complaint contains no separate counts, plaintiffs contend that defendants "improperly denied [the visa], through arbitrary and capricious actions, in bad faith by not providing Ms. Nasimi a facially legitimate and bona fide reason for the denial of the application for Alien Fiancé visa submitted by Mr. Carter." *Id.* at 3. Plaintiffs also allege that defendants violated Mr. Carter's First and Fifth Amendment rights and Ms. Nasimi's due process rights. *See id.* at 3, 16–17. They ask this Court (1) to declare that the visa denial was unlawful, (2) to compel defendants to approve Ms. Nasimi's visa application, and (3) to award "other relief at law or in equity as justice may require." *Id.* at 17–18.

Defendants again moved to dismiss. They argue, among other things, that several of the named officials cannot provide the requested relief, Def.'s Mot. 4–6; that plaintiffs' claims are barred by consular nonreviewability, *id.* at 6–10; and that Ms. Nasimi, as an unadmitted alien, lacks standing, *id* at 10–11.

Plaintiffs oppose. In their opposition, they argue that the consular officer's decision was in bad faith. Pls.' Opp'n 5–6. Plaintiffs also dispute the facial legitimacy of the consular officer's initial visa refusal. They argue that reliance on section 221(g) of the Immigration and Nationality Act ("INA") is too imprecise because it incorporates several other INA provisions. *Id.* at 7–8. In plaintiffs' telling, consular nonreviewability does not apply without a bona fide and facially

legitimate reason for the denial. *Id.* at 8; *see* Am. Compl. 14. Plaintiffs also contend that Ms. Nasimi's standing is of no importance because Mr. Carter has standing. Pls.' Opp'n 9. Defendants filed a reply in support of their motion. *See* Defs.' Reply.

Defendants' renewed motion to dismiss is ripe for review.

## II.    LEGAL STANDARDS

To survive defendants' motion to dismiss, plaintiffs' amended complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the Court can reasonably infer from the factual content pleaded that the defendant is liable for the alleged misconduct. *Id.* Plausibility requires more than a "sheer possibility that the defendant has acted unlawfully" but does not require a "probability" that the defendant is in the wrong. *Id.* Though legal conclusions "can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. For this reason, "'naked assertion[s]' devoid of 'further factual enhancement'" and "formulaic recitation[s] of the elements of a cause of action" will not survive a motion to dismiss. *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555, 557). "When ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Atherton v. D.C. Off. of Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009) (quotations omitted).

## III.    ANALYSIS

Plaintiffs' claims are foreclosed by the doctrine of consular nonreviewability. Plaintiffs identify no applicable exception to the doctrine, so the Court need not consider whether the consular officer's decision was in good faith or is facially legitimate. The Court will also reject plaintiffs' informal request to amend their complaint, which does not comply with the federal or local rules of civil procedure.

### A. The Court Will Dismiss As Moot Defendants' First Motion To Dismiss

On May 26, 2021, defendants filed a motion to dismiss. ECF No. 7. However, on June 16, 2021, plaintiffs filed an amended complaint as a matter of course. Am. Compl.; *see* Fed. R. Civ. P. 15(a)(1)(B). The amended complaint is now the operative pleading, and the prior pending motion to dismiss may be dismissed without prejudice as moot. *See, e.g.*, *Easter v. District of Columbia*, 128 F..Supp. 3d 173, 177 (D.D.C. 2015). Accordingly, the Court will **DISMISS AS MOOT** defendant's first motion to dismiss.

### B. Plaintiffs' Claims Are Foreclosed By The Doctrine Of Consular Nonreviewability

Plaintiffs' amended complaint challenges the denial of Ms. Nasimi's visa.[3] But their challenge is squarely foreclosed by the doctrine of consular nonreviewability. The doctrine recognizes that Congress has empowered consular officers with the exclusive authority to review a proper application for a visa when made overseas. *See* 8 U.S.C. §§ 1104(a), 1201(a), 1201(g). Thus, in practice, "a consular official's decision to issue or withhold a visa is not subject to judicial review, at least unless Congress says otherwise." *Joorabi*, 464 F. Supp. 3d at 100 (quoting

---

[3] Plaintiffs' initial complaint challenged defendants' *inaction*—specifically, defendants keeping Ms. Nasimi's application in a state of "administrative processing." This Court has held, consistent with other courts in this district, that refusals followed by "administrative processing" are not "final decisions" that trigger consular reviewability. *See, e.g.*, *Joorabi v. Pompeo*, 464 F. Supp. 3d 93, 100 (D.D.C. 2020) (Lamberth, J.); *Ibrahim v. U.S. Dep't of State*, No. 19-cv-610 (BAH), 2020 WL 1703892, at *5 (D.D.C. Apr. 8, 2020); *Nine Iraqi Allies v. Kerry*, 168 F. Supp. 3d 268, 290 (D.D.C. 2016).

But the amended complaint is not challenging defendants' inaction. There is no dispute that Ms. Nasimi's visa application has now been refused with finality. *See, e.g.*, Am. Compl. 1 ("This is a civil action . . . seeking judicial review . . . on the final decision of the United States Department of State."). Defendants returned Mr. Carter's petition to USCIS. Dybdahl Decl. ¶ 5. And the embassy returned Ms. Nasimi's passport and materials to her. Am. Compl. 10. Any claim challenging defendants' earlier delay in reaching a final determination is moot. *See, e.g.*, *Jafari v. Pompeo*, 459 F. Supp. 3d 69, 77 (D.D.C. 2020) ("Any claim with respect to the underlying visa application itself is thus moot, as the government already made a final decision about that application."); *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000) (explaining that a case is moot when "the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome"). And to the extent that plaintiffs rely on any delay during "administrative processing" as evidence of bad faith, *see* Pls.' Opp'n 6, the Court need not consider these arguments because no exception to consular nonreviewability applies. *See infra* Section III.B.

*Saavedra Bruno v. Albright*, 197 F.3d 1153, 1159 (D.C. Cir. 1999)).  Consular officers retain their

"complete discretion" over the issuance of visas, *Saavedra Bruno*, 197 F.3d at 1158 n.2, "even

where it is alleged that the consular officer failed to follow regulations, . . . or where the decision

is alleged to have been based on a factual or legal error," *Chun v. Powell*, 223 F. Supp. 2d 204,

206 (D.D.C. 2002) (internal citations omitted).  The doctrine respects the "political nature of visa

determinations and the lack of any statute authorizing judicial review of consular officers'

actions." *Joorabi*, 464 F. Supp. 3d at 100 (quoting *Saavendra Bruno*, 197 F.3d at 1159).  Decisions

regarding the admission and exclusion of noncitizens "may implicate relations with foreign

powers, or involve classifications . . . defined in the light of changing political and economic

circumstances" and "such judgments 'are frequently of a character more appropriate to either the

Legislature or the Executive.'" *Baan Rao Thai Rest. v. Pompeo*, 985 F.3d 1020, 1024 (D.C. Cir.

2021) (quoting *Trump v. Hawaii*, 138 S. Ct. 2392, 2418–19 (2018)).[4]

Here, plaintiffs argue that Ms. Nasimi's visa denial was "improper[]," "arbitrary and

capricious," "in bad faith," and "unlawful." Am. Compl. 3, 17.  And they ask this Court to compel

defendants to review and approve her visa application.  *Id.* at 3 & 7.  No matter how framed,

plaintiffs' lawsuit runs headfirst into the consular nonreviewability bar.  Consular officials are

vested with "exclusive authority" to review visa applications. *Baan Rao Thai Rest.*, 985 F.3d at

495.  Absent an exception to consular nonreviewability, the Court lacks authority to review the

denial or grant the requested relief.

---

[4] Notably, while defendants are correct that consular nonreviewability prevents adjudication of a visa denial, *e.g.*, Defs.' Mot. at 8, consular nonreviewability does not involve a "jurisdictional" determination made under Federal Rule of Civil Procedure 12(b)(1).  The D.C. Circuit recently clarified that the "jurisdictional" nature of the doctrine rests on the unwillingness of Article III courts to interfere with the consular prerogative of the Executive Branch. *See Baan Rao Thai Rest.*, 985 F.3d at 1029.  Therefore, "[d]ismissal based on consular nonreviewability . . . is a *merits* disposition under Federal Rule of Civil Procedure 12(b)(6)." *Id.* at 1027 (emphasis added).

The D.C. Circuit has recognized only two exceptions to consular nonreviewability. First, "an American citizen can challenge the exclusion of a noncitizen if it burdens the citizen's constitutional rights." *Baan Rao Thai Rest.*, 985 F.3d at 1024; *see Trump v. Hawaii*, 138 S. Ct. at 2416; *Kleindienst v. Mandel*, 408 U.S. 753, 762 (1972). The second exists only if a "statute expressly authoriz[es] judicial review of consular officers' actions." *Baan Rao Thai Rest.*, 985 F.3d at 1025 (alteration in original) (quoting *Saavendra Bruno*, 197 F.3d at 1159). Neither exception applies here.

Ms. Nasimi's visa denial does not violate Mr. Carter's constitutional rights. In their complaint, plaintiffs argue that Mr. Carter has "been denied his liberty interest"—that is, his "fundamental right . . . to marry a person of [his] choosing and to live together and to raise a family"—without due process of law. Am. Compl. 16. Plaintiffs are correct that "freedom of personal choice in matters of marriage and family life is a liberty interest protected by the due process clause." *Cleveland Bd. of Educ. v. LaFleur*, 414 U.S. 632, 639–40 (1974). But these rights are not violated when a spouse is removed or denied entry into the United States. *See, e.g.*, *Swartz v. Rogers*, 254 F.2d 338, 339 (D.C. Cir. 1958); *Singh v. Tillerson*, 271 F. Supp. 3d 64, 71 (D.D.C. 2017); *Udugampola v. Jacobs*, 795 F. Supp. 2d 96, 105–06 (D.D.C. 2011) (collecting cases). Indeed, in *Swartz*, the D.C. Circuit opined that:

> Certainly deportation would put burdens upon the marriage. It would impose upon the wife the choice of living abroad with her husband or living in this country without him. But deportation would not in any way destroy the legal union which the marriage created. The physical conditions of the marriage may change, but the marriage continues. Under these circumstances we think the wife has no constitutional right which is violated by the deportation of her husband.

*Swartz*, 254 F.2d at 339. This Court is persuaded by the other courts in this district applying *Swartz* that the denial of a visa application does not interfere with the right to marry. *See, e.g.*, *Singh*, 271

F. Supp. 3d at 71; *Rohrbaugh v. Pompeo*, 394 F. Supp. 3d 128, 133–34 (D.D.C. 2019) (collecting cases), *aff'd*, No. 19-5263, 2020 WL 2610600 (D.C. Cir. May 15, 2020).

Nor are Mr. Carter's First Amendment rights violated by the visa denial. Plaintiffs' opposition identifies no facts and provides no argument about how Mr. Carter's First Amendment rights have been infringed. "It is well understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded." *Hopkins v. Women's Div., Gen. Bd. of Glob. Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003) (citations omitted), *aff'd*, 98 Fed. App'x. 8 (D.C. Cir. 2004). Accordingly, the Court will treat these claims as conceded.

Even if not conceded, plaintiffs' purported First Amendment claims are also meritless. Plaintiffs cannot reframe their due process claim as a First Amendment claim. As another court in this district recently recognized, whether the right to marriage is "cast as a due process right or an associational right . . . 'does not alter [the] analysis." *Colindres, v. U.S. Dep't of State*, No. 21-cv-348 (GMH), 2021 WL 5906041, at *10 (D.D.C. Dec. 14, 2021) (alteration in original) (quoting *Muir v. Decatur Cnty.*, 917 F.3d 1050, 1053–54 (8th Cir. 2019)). For the same reasons that plaintiffs' due process claims are foreclosed by Circuit precedent, so too are their First Amendment claims. Finally, to the extent that the amended complaint invokes Mr. Carter's "right to petition the government," Am. Compl. 16, the complaint fails to allege facts from which the Court can conclude that this right was plausibly affected by Ms. Nasimi's visa denial.

With the first exception to consular nonreviewability unavailable, the next issue is any statute expressly authorizes review of the decision in this case. There is not. Plaintiffs' complaint first cites the APA. *See* Am. Compl. 3–4, 17. But the D.C. Circuit has squarely held that the APA

provides no basis for challenging consular decisions. *Saavedra Bruno*, 197 F.3d at 1158. Section 702 of the APA explicitly preserves "other limitations on judicial review" that predated the APA, which include the doctrine of consular nonreviewability. *See, e.g.*, *Joorabi*, 464 F. Supp. 3d at 101 (citing *Saavedra Bruno*, 197 F.3d at 1158). The APA provides no vehicle for judicial review of Ms. Nasimi's visa denial.

Nor does the INA permit review of the visa denial or granting plaintiffs' requested relief. Indeed, it is the INA *itself* that grants "grants consular officers '*exclusive* authority to review applications for visas, precluding even the Secretary of State from controlling their determinations.'" *Baan Rao Thai Rest.*, 985 F.3d at 1024 (quoting *Saavedra Bruno*, 197 F.3d at 1156) (emphasis added). Plaintiffs' contention that "Congress never outright forbade administrative or judicial review" in the INA is not consistent with the INA's text or the law in this Circuit. Am. Compl. 15.

Plaintiffs' complaint also invokes the Declaratory Judgment Act, 28 U.S.C. § 2201–02, and the Mandamus Act, 28 U.S.C. § 1361. Am. Compl. 3. But these statutes are not cognizable where, as here, plaintiffs have "no clear right to relief." *Van Ravenswaay v. Napolitano*, 613 F. Supp. 2d 1, 6 (D.D.C. 2009); *see, e.g.*, *In re Medicare Reimbursement Litig.*, 414 F.3d 7, 10 (D.C. Cir. 2005) (holding that mandamus is cognizable only where "the plaintiff has a clear right to relief"); *Schilling v. Rogers*, 363 U.S. 666, 677 (1960) (holding that the Declaratory Judgment Act "presupposes the existence of a judicially remediable right"); *cf. Trump v. Hawaii*, 138 S. Ct. at 2419 ("[F]oreign nationals seeking admission have no constitutional right to entry.").

Finally, there is no exception to consular nonreviewability that applies when a consular officer violates established procedures or regulations. *See Chun*, 223 F. Supp. 2d at 206; *Burrafato*

*v. Dep't of State*, 523 F.2d 554 (2d Cir. 1975). Plaintiffs' suggestions to the contrary are without merit. *See* Am. Compl. 14; Pls.' Opp'n 6.

Because neither exception to consular nonreviewability applies, that is the end of the matter. The Court need not consider whether the consular officer's decision is "facially legitimate and bona fide"—the so-called *Mandel* exception on which the plaintiffs rely—because this limited standard of review applies only when the plaintiff can point to a cognizable constitutional violation of a U.S. citizen. *See, e.g.*, *Rohrbaugh*, 394 F. Supp. 3d at 134 ("Without a cognizable constitutional violation on which to hang their hats, the [plaintiffs] cannot avoid the doctrine of consular non-reviewability."); *Polyzopoulos v. Garland*, No. 20-cv-804, 2021 WL 1405883, at *6–7 (D.D.C. Apr. 14, 2021) ("Plaintiffs do not explain anywhere in their opposition brief how Mr. Polyzopoulos's visa denial has burdened a [U.S.] citizen's constitutional rights. This alone is prohibitive." (cleaned up)). While plaintiffs "respectfully argue that it is time" for consular nonreviewability "to be challenged more broadly," Am. Compl. 14, this Court is bound by the decisions of the D.C. Circuit and U.S. Supreme Court. *See, e.g.*, U.S. Const. art. III, § 1.[5]

## C. The Court Rejects Plaintiffs' Informal Request For Leave To Amend Their Complaint

Plaintiffs argue that "if the Court agrees in [sic] any aspect of [d]efendants' [m]otion and identifies any deficiencies" in their amended complaint, the Court should grant leave to file a second amended complaint. Pls.' Opp'n 11. The Court will not consider plaintiffs' last-ditch effort to prevent dismissal. The D.C. Circuit has been clear: "a bare request in an opposition to a

---

[5] In their opposition, plaintiffs cryptically suggest that DHS and USCIS's adjudication is "[i]ncomplete" given that USCIS has not yet acted on the returned petition. *See* Pls.' Opp'n 3–5. But nothing in the complaint challenges defendants' actions (or lack thereof) regarding the returned petition. Nor does anything in the complaint challenge these defendants' initial decision regarding Mr. Carter's petition. Indeed, DHS and USCIS *approved* Mr. Carter's petition and forwarded it to the NVC. The Court is not convinced that these ambiguous assertions somehow save plaintiffs' complaint from dismissal.

motion to dismiss—without any indication of the particular grounds on which amendment is sought—does not constitute a motion [to amend] within the contemplation of [Federal Rule of Civil Procedure] 15(a)." *Confederate Mem'l Ass'n, Inc. v. Hines*, 995 F.2d 295, 299 (D.C. Cir. 1993). Plaintiffs do not indicate "the particular grounds on which amendment is sought" or "what th[e] [additional] facts might be" that would entitle them to relief. *Id.* Plaintiffs' request is inadequate under the Federal Rules and will not be considered.

Additionally, the local rules in this district require that any motion for leave to file an amended pleading be accompanied by an original of the proposed pleading as amended. *See* LCvR 7(i); LCvR 15.1. This requirement "is no mere formality." *Kim v. United States*, 840 F. Supp. 2d 180, 190 (D.D.C. 2012), *aff'd*, 707 F.3d 335 (D.C. Cir. 2013). As plaintiffs acknowledge, to determine whether granting leave to amend is in the interest of justice the Court must consider "(1) undue delay; (2) prejudice to the opposing party; (3) futility of the amendment; (4) bad faith; and (5) whether the plaintiff has previously amended the complaint." *Howell v. Gray*, 843 F. Supp. 2d 49, 54 (D.D.C. 2012) (citing *Atchinson v. District of Columbia*, 73 F.3d 418 (D.C. Cir. 1996)). But "[i]n the absence of a proposed pleading, neither the opposing party nor the district court is in a position to determine whether or not [the] proposed amendments would be futile." *Kim*, 840 F. Supp. 2d at 190 (alterations in original) (internal quotation marks and citation omitted). Here too, the D.C. Circuit has held that the failure to "tender a proposed amended complaint . . . vitiate[s] any need for the district court to explain why permitting amendment . . . [is] not in the interest of justice." *Kowal v. MCI Commcn's Corp.*, 16 F.3d 1271, 1280 (D.C. Cir. 1994).

Accordingly, the Court will reject plaintiffs' informal request for leave to amend their complaint.

## IV.   CONCLUSION

Based on the foregoing, the Court will **DISMISS AS MOOT** defendant's initial motion to dismiss, **GRANT** defendants' second motion to dismiss, and **DISMISS** plaintiffs' complaint by separate order.

Date: ___12/22/21___

Royce C. Lamberth
United States District Judge